609 A.2d 540

COMMONWEALTH of Pennsylvania

v.

Gregory PETERFIELD, Appellant.

Superior Court of Pennsylvania.

Argued May 14, 1991.

Filed May 14, 1992.

Reargument Denied July 16, 1992.

Owen Larrabee, Asst. Public Defender, Philadelphia, for appellant.

Norman Gross, Asst. Dist. Atty., Philadelphia, for the Com., appellee.

Before McEWEN, KELLY and FORD ELLIOTT, JJ.

KELLY, Judge:

Appellant appeals from an order denying a Writ of Certiorari to the Court of Common Pleas of Philadelphia. We affirm.

The facts and procedural history may be briefly summarized as follows. On November 19, 1988, at approximately 12:50 p.m., Philadelphia Police Officer George Hoy was approached while on duty in his patrol wagon by an unidentified citizen who told him that a six foot tall black male, with a beard, a three-fourth length ski jacket, a blue knit hat, and dark colored pants was in the parking lot of a nearby supermarket acting "suspiciously." N.T. 3/20/89 at 4. Officer Hoy immediately proceeded to the location where he observed appellant, who matched the description, quickly leaving the parking lot. Officer Hoy then directed

appellant to stop. He did not. Instead, appellant put his left hand inside his coat pocket and fled. Officer Hoy gave chase, but it was to no avail. Appellant successfully escaped, leaving behind what Officer Hoy later recovered and identified as a loaded .25 caliber automatic handgun.

A short time later, other officers, who had been advised of the foregoing facts, encountered appellant and arrested him. Appellant was charged with carrying a firearm without a license and carrying firearms on the public streets of Philadelphia.[1] A motion to suppress the handgun was filed and denied. Appellant was thereafter tried and convicted of both charges in Philadelphia Municipal Court. Appellant timely filed a petition for a Writ of Certiorari which was denied by order of the Honorable Edward E. Russell of the Court of Common Pleas. This timely appeal followed.

On appeal, appellant contends that the court erred in failing to suppress the gun which conclusively established his guilt at trial. His sole argument is that his right to be free of unreasonable searches and seizures as guaranteed under both the United States Constitution and the Pennsylvania Constitution was violated because Officer Hoy lacked probable cause or reasonable suspicion to direct him to stop as he was leaving the parking lot.[2] Appellant maintains that, notwithstanding the fact that he did not comply and, in fact, successfully eluded Officer Hoy, the gun retrieved after the unsuccessful pursuit of him must be suppressed as fruit of an unconstitutional "seizure." We cannot agree.

1. 18 Pa.C.S.A. §§ 6106 & 6108.
2. Appellant argues in his brief that:
   Since the officer possessed neither probable cause to arrest nor justification for an investigatory stop, the intrusion that forced appellant's abandonment of the weapon was unlawful, and in violation of the Fourth Amendment to the United States Constitution and Article I, § 8 of the Pennsylvania Constitution.
   Appellant's Brief at 5. The Commonwealth contends, however, that appellant has waived for the purposes of appeal the question of whether reasonable suspicion existed to justify an investigatory stop since appellant argued to the suppression court only that probable cause was lacking to *arrest* him. Due to our disposition, the Commonwealth's waiver argument is rendered moot. Thus, we need not address this question.

Under the United States Constitution, appellant's claim is manifestly flawed. In the recent case, *California v. Hodari D.,* — U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court was presented with a fact scenario which is materially indistinguishable from that *sub judice.* In *Hodari D.,* police encountered a group of youths, including Hodari; who had gathered at a street corner. When police officers approached, the youths quickly dispersed and fled. Police ran after Hodari who, while being chased, tossed away what appeared to be a small rock, but later proved to be crack cocaine. An order denying a motion to suppress the cocaine was entered, but later reversed by the intermediate appellate level court of California. The state thereafter successfully petitioned the United States Supreme Court to review the order which reversed the refusal to suppress. Hodari, as respondent, argued that although he had not yet been caught when he discarded the cocaine, he was nonetheless "seized" for the purposes of the Fourth Amendment. A 7–2 majority of the United States Supreme Court disagreed:

> The language of the Fourth Amendment, of course, cannot sustain respondent's contention. The word "seizure" readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ("She seized the purse-snatcher, but he broke out of her grasp.") It does not remotely apply, however, to the prospect of a policeman yelling "Stop, in the name of the law!" at a fleeing form that continues to flee. *That is no seizure.* Nor can the result respondent wishes to achieve be produced—indirectly, as it were—by suggesting that Pertoso's [the officer's] uncomplied-with show of authority was a common-law arrest, and then appealing to the principle that all common-law arrests are seizures. *An arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority.*

*Id.,* — U.S. at ——, 111 S.Ct. at 1550–51, 113 L.Ed.2d at 697 (emphasis added).

Here, no physical force was applied to appellant and he did not submit to the assertion of authority. Rather, when police asserted their authority by requesting him to stop, appellant chose not to comply and immediately fled the scene. Such flight, of course, did not alone give police cause to arrest him. *See Commonwealth v. Jeffries*, 454 Pa. 320, 325, 311 A.2d 914, 917 (1973); *Commonwealth v. Martinez*, 403 Pa.Super. 125, 128, 588 A.2d 513, 514 (1991).[3] The success of it, however, does prevent this Court from considering him "seized" for the purposes of the Fourth Amendment. *See California v. Hodari D., supra.* Thus, under the United States Constitution, appellant's assertion, that probable cause or reasonable suspicion was necessary to justify police action taken before their recovery of the gun must fail. For the purposes of the Fourth Amendment, we need not even evaluate what, *if any*, suspicion the police had before they retrieved the gun since appellant was not, at that point, "seized." *See id.*

■ The flaw in appellant's argument under the Pennsylvania Constitution is perhaps less obvious, but no less fatal. It is of course true that Pennsylvanians' may adopt a state constitution which imposes greater limitations upon the state, and that Pennsylvania courts may (indeed must) give effect to any such decision to do so. As our Supreme Court most recently reaffirmed in *Commonwealth v. Edmunds*, 526 Pa. 374, 389, 586 A.2d 887, 894–95 (1991),

> Here in Pennsylvania, we have stated with increasing frequency that it is both important and necessary that we undertake an independent analysis of the Pennsylvania Constitution, *each time a provision of that fundamental document is implicated.* Although we may accord weight to federal decisions where they "are found to be logically persuasive and well reasoned, paying due regard

---

3. *See also Commonwealth v. Metz*, 412 Pa.Super. 100, 118, 602 A.2d 1328, 1337 (1992) (No. 1632 Pittsburgh 1990) (Kelly, J., concurring) ("The free citizen in a free country such as ours of course retains the discretion to run, walk, crawl or stop . . ., and accordingly, neither the police nor the courts can draw any adverse inferences from the exercise of *any* such discretion").

to precedent and the policies underlying specific constitutional guarantees," *Commonwealth v. Tarbert,* 517 Pa. 277, 283, 535 A.2d 1035, 1038 (1987), *quoting,* Brennan, *State Constitutions and the Protection of Individual Rights,* 90 Harv.L.Rev. 489, 502 (1977), we are free to reject the conclusions of the United States Supreme Court so long as we remain faithful to the minimum guarantees established by the United States Constitution.

Instantly, for appellant to gain relief under the Pennsylvania Constitution, he must establish that Article I, Section 8 of the Pennsylvania Constitution, unlike the Fourth Amendment of the federal constitution, must be interpreted so as to consider an individual "seized" in the absence of an application of actual physical force or the submission to the assertion of authority.[4] However, appellant has not cited, and we cannot find, support for any such proposition. Indeed, no case which we have uncovered has held, suggested or even intimated that a distinction between the Pennsylvania and United States Constitutions exists with regard to the definition of the term "seizure." Rather, the *only* Pennsylvania cases defining when a "seizure" of the person occurs are based *solely* upon interpretations of the term "seizure" as used in the *United States Constitution, not the Pennsylvania Constitution. See e.g. Commonwealth*

---

**4.** Art. I, Section 8 of the Pennsylvania Constitution provides as follows:

**Security from Searches and Seizures**

Section 8. The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and *seizures,* and no warrant to search any place or to seize and person or thing shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

(Emphasis added). The 4th Amendment of the United States Constitution reads:

**Amendment IV**

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and *seizures,* shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

(Emphasis added).

*v. Barnett,* 484 Pa. 211, 398 A.2d 1019 (1979) (interpreting Pennsylvania cases following *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Hall,* 475 Pa. 482, 380 A.2d 1238 (1977) (same); *Commonwealth v. Jones,* 474 Pa. 364, 378 A.2d 835 (1977) (same); *Commonwealth v. Jeffries,* 454 Pa. 320, 311 A.2d 914 (1973) (same); *Commonwealth v. Pollard,* 450 Pa. 138, 299 A.2d 233 (1973) (finding *Terry v. Ohio, supra,* controlling); *Commonwealth v. Berrios,* 437 Pa. 338, 263 A.2d 342 (1970) (same); *Commonwealth v. Hicks,* 434 Pa. 153, 253 A.2d 276 (1969) (same); *Commonwealth v. Brown,* 388 Pa.Super. 187, 565 A.2d 177 (1989) (interpreting *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)); *Commonwealth v. Bulling,* 331 Pa.Super. 84, 480 A.2d 254 (1984) (quoting *United States v. Colbert,* 474 F.2d 174, 176 (5th Cir.1973)); *Commonwealth v. Williams,* 287 Pa.Super. 19, 429 A.2d 698 (1981) (interpreting Pennsylvania cases following *Terry v. Ohio, supra* ); *Commonwealth v. Howell,* 213 Pa.Super. 33, 245 A.2d 680 (1968) (interpreting Pennsylvania cases following *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963)). These cases are limited to the logic that gave them birth. Thus, to the extent that their holdings conflict with the United States Supreme Court's most recent definition of the term "seizure," they must be seen as having been *overruled, sub silentio,* by *California v. Hodari D., supra,* as the United States Supreme Court is always the final arbiter of the United States Constitution. *See Cooper v. Aaron,* 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958).

■ Moreover, appellant has not properly asked us herein to *declare* that such a distinction between the constitutions exists. His failure to do so prevents us from finding any merit to his appeal.

■ In *Commonwealth v. Edmunds, supra,* our Supreme Court held,

The recent focus on the "New Federalism" has emphasized the importance of state constitutions with respect to individual rights and criminal procedure. As such, *we*

*find it important to set forth certain factors to be briefed and analyzed by litigants in each case hereafter implicating a provision of the Pennsylvania constitution.* The decision of the United States Supreme Court in *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), now requires us to make a "plain statement" of the adequate and independent state grounds upon which we rely, in order to avoid any doubt that we have rested our decision squarely upon Pennsylvania jurisprudence. Accordingly, as a general rule *it is important that litigants brief and analyze at least the following four factors:*

1) text of the Pennsylvania constitutional provision;
2) history of the provision, including Pennsylvania case-law;
3) related case-law from other states;
4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

Depending upon the particular issue presented, an examination of related federal precedent may be useful as part of the state constitutional analysis, not as binding authority, but as one form of guidance. However, it is essential that courts in Pennsylvania undertake an independent analysis under the Pennsylvania Constitution.

*Id.,* 526 Pa. at 390–391, 586 A.2d at 894–95 (footnotes omitted) (emphasis added). Our Supreme Court's emphasis on the importance of the proper briefing and review of state constitutions *vis a vis* individual rights and criminal procedure may not be discounted. We discern from the *Edmunds* decision, which imposes a "general rule" upon the litigants to *"in each case ... brief* and *analyze at least* the ... four factors" set forth therein, that a procedural prerequisite to review of any claim regarding a distinction between the state and federal constitutions has been imposed. We must, therefore, decline review of the merits of any such claim raised without the benefit of such briefing or analysis.

Here, appellant's brief not only lacks any analysis as to the four factors identified in *Edmunds*, it lacks even a *contention* that a distinction between the constitutions exists. Appellant has apparently *presumed* that he was "seized" for the purposes of both constitutions, and has thus placed in his brief arguments relating only to the degree of probable cause or reasonable suspicion held by the police officers at the time police began chasing appellant.[5] Under these circumstances it would be particularly inappropriate for this Court to address any question as to a distinction between the constitutions. Such *sua sponte* review of a claim would impermissibly "deprive[ ] counsel of the opportunity to brief and argue the issue[ ] and the court of the benefit of counsel's advocacy." *Wiegand v. Wiegand*, 461 Pa. 482, 485, 337 A.2d 256, 257 (1975); *see also Commonwealth v. Butler*, 529 Pa. 7, ——, 601 A.2d 268, 275 (1991) (Papadakos, J., dissenting). We are mindful of the fact that our Supreme Court has not hesitated in the past to reverse this Court where we have reviewed issues not raised by the parties. *See e.g., Estep v. Estep*, 508 Pa. 623, 500 A.2d 418 (1985); *Commonwealth ex rel. Robinson v. Robinson*, 505 Pa. 226, 478 A.2d 800 (1984); *accord see Commonwealth v. Butler, supra*, 529 Pa. at ——, 601 A.2d at 275 (Papadakos, J., dissenting) (citing cases). This is perhaps especially true where this Court has raised constitutional questions of its own accord. *See Wiegand v. Wiegand, supra*, 461 Pa. at 485, 337 A.2d at 257 (holding that "[t]he Superior Court by *sua sponte* deciding the

5. Appellant's presumption in this regard is not, perhaps, surprising, given the fact that the Commonwealth and the trial court also labored under the impression that appellant's "seizure" was a foregone conclusion. *California v. Hodari D., supra*, was not filed until shortly before oral argument was heard in this case. However, such facts neither provide an exception to the waiver doctrine nor preclude us from affirming appellant's conviction based on grounds other than those used by the trial court. *See Commonwealth v. Allem*, 367 Pa.Super. 173, 532 A.2d 845 (1987). Regardless of the state of the law at the time of appellant's conviction, we are bound to apply the law as it stands today, on direct appeal. *California v. Hodari D., supra*, currently stands as the only relevant expression of the point at which a person is "seized." We are therefore bound to follow it, rather than any previous cases which have been overruled by it, *sub silentio*.

constitutional issues [*i.e.* whether the Divorce Law violated the Equality of Rights Amendment to the Pennsylvania Constitution] exceeded its proper appellate function of deciding controversies presented to it."). Thus, in the absence of an appropriate request to do so, we are unauthorized to question for the first time whether the term "seizure," as used in the Pennsylvania Constitution, affords appellant greater rights than does the federal definition of the same term. Accordingly, we are compelled to consider that, at this point at least, appellant's rights against the state in this case are not protected to any greater extent by the Pennsylvania Constitution.

## CONCLUSION

In short, we find that since no application of actual physical force was used and appellant did not submit, but rather fled upon the assertion of police authority, appellant was not "seized" for the purposes of the Fourth Amendment. Appellant has neither cited support for, nor asked us to find, a distinction between the federal and state constitutions in this regard. We must, therefore, conclude that no probable cause or reasonable suspicion was necessary to recover the "fruit" of the unsuccessful chase. Accordingly, we find his claim on appeal to be without merit.

Order AFFIRMED.

McEWEN, J., concurs in the result of the opinion by Kelly, J.

FORD ELLIOTT, J., files a dissenting opinion.

FORD ELLIOTT, Judge, dissenting.

I must respectfully dissent. On appeal, appellant presents both a Federal and state constitutional claim and asks this court to determine whether the court below erred in denying appellant's motion to suppress physical evidence, where the underlying facts did not amount to reasonable suspicion for an investigatory stop, nor cause to arrest. It is appellant's assertion that the evidence did not support reasonable suspicion or probable cause; therefore, the phys-

ical evidence obtained as a result of unlawful police activity should have been suppressed under a theory of forced abandonment.

In response to this argument, the Commonwealth suggests that we need not decide whether the officer had reasonable suspicion to attempt to stop appellant, where such attempt was thwarted by appellant's decision to run from the officer. The Commonwealth argues that there was no seizure, since appellant fled from the officer; hence, the theory of forced abandonment is factually inapplicable. This theory is premised on the United States Supreme Court decision in *California v. Hodari*, —— U.S. ——, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). *Hodari* was decided April 23, 1991, just prior to oral argument in this case, and the Commonwealth presented it to the court at that time. While preserving the responsive arguments presented in its brief, that the police had justification to stop appellant and that in any case the issue is waived, the Commonwealth advocated the adoption in this Commonwealth of the *Hodari* decision.

I acknowledge and appellant concedes that his Federal question is no longer a viable claim in light of the Supreme Court decision in *Hodari*. The majority decides that because appellant's state constitutional argument does not address the standard announced in *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), he is precluded from raising it at this time, and we, as an appellate court, are further precluded from addressing this claim. However, *Hodari* was filed just three weeks before the instant case was argued, and more than one month after briefs herein were filed. The briefing standard directed by *Edmunds* only applies when federal law deviates from past precedent, disrupting state law which depended thereon. Clearly, there was no need for either party to address the *Edmunds* standard in their briefs where, prior to the *Hodari* decision, the state and federal constitutional claims presented herein were co-extensive. Therefore, the failure to comply with the *Edmunds* briefing directive should not

preclude this court from undertaking its own independent analysis under the Pennsylvania Constitution. Contrary to the majority's assessment, I find that *Edmunds* requires us to make such an independent analysis.

Undeniably, the facts herein are similar to those in *Hodari*. In *Hodari*, plain-clothed officers were patrolling a high-crime section of Oakland, California, when they spotted several youths congregated around a car which was parked on a curb. Upon seeing the officers' unmarked car, the group took flight in different directions. With suspicions aroused, the officers pursued the youths. During a foot chase between Hodari and one officer, Hodari tossed a small rock-like object, and was thereafter tackled and handcuffed. A pager and $130 in cash were found on Hodari, and the abandoned property was determined to be crack cocaine.

At trial, Hodari's motion to suppress the evidence was denied. On appeal, the appellate court reversed, finding that Hodari had been seized at the time he abandoned the property, and the seizure was in violation of the Fourth Amendment. On *certiorari* to the Supreme Court, California conceded that the officers did not have the requisite reasonable suspicion to stop Hodari. However, the state argued that the more appropriate inquiry was whether Hodari had been seized when he abandoned the property where the officer's attempt to stop Hodari had been unsuccessful. The court adopted California's argument and permitted the inquiry to overstep a question of whether reasonable suspicion existed for a *Terry* stop, where such attempted stop was thwarted by a fleeing suspect. The opinion, authored by Justice Scalia, utilized a common law approach to the question of seizure and arrest and reasoned that a seizure had not occurred where Hodari refused to submit to the officer's show of authority and, therefore, there was not a restraint on Hodari's liberty. Concluding that Hodari had not been seized, the court reasoned that the crack cocaine was abandoned property, which was lawfully recovered by

the police and was admissible evidence against Hodari. *Hodari, supra.*

Instantly, we have an almost identical factual situation. Appellant was approached by a police officer who did not have reason to suspect appellant of criminal activity, but was acting on the reported observation of a passerby that appellant was "acting suspiciously." As in *Hodari*, the uniformed officer made a show of authority, which in this case was ordering appellant to "stand fast." Despite the officer's attempt to detain appellant, appellant fled the scene. Under an *Hodari* analysis, we must refrain from inquiring whether the officer had reasonable suspicion to attempt to stop appellant; instead, we focus our analysis on whether appellant was seized at the point where he abandoned the weapon. According to *Hodari*, appellant's failure to submit to the officer's show of authority negates a finding of "seizure" under the Fourth Amendment, since a restraint on appellant's liberty was never culminated. Thus, appellant's abandonment of the weapon was voluntary; thereafter, the gun was lawfully retrieved abandoned property and could be used against appellant at trial.

I consider *Hodari* to represent a radical departure from the law of this Commonwealth on forced abandonment. Heretofore, case law in this jurisdiction has substantiated the use of a two-step analysis when resolving forced abandonment issues. For example, in *Commonwealth v. Jeffries*, 454 Pa. 320, 311 A.2d 914 (1973), our supreme court was presented with a Fourth Amendment forced abandonment challenge and determined that the abandonment of drugs by a defendant during a police chase was coerced. The facts in *Jeffries* were as follows:

On the afternoon of November 6, 1970, four police officers in an unmarked police automobile observed Jeffries walking along a public street in Pittsburgh. One officer testified when Jeffries saw the officers, he 'quickened his pace.' Upon seeing him do so, the officer left the police vehicle and started to pursue Jeffries, who then began to run. While giving chase, the officer observed Jeffries throw a cigarette package under an automobile parked

along the street. Shortly thereafter, the officer overtook Jeffries and directed him to stand against a wall. At that moment the other officers arrived on the scene and they were told by the officer, who apprehended Jeffries, to 'hold him one minute.' The officer then recovered the cigarette package from underneath the parked vehicle, and it was found to contain several foil-wrapped packages of a substance later determined to be heroin.

*Id.*, 454 Pa. at 322, 311 A.2d at 916. Finding that flight in and of itself is not sufficient to constitute probable cause for an arrest, the court looked to *Terry* to determine if the officers had reasonable suspicion to initiate the chase.

Instantly, there is not one fact which would give rise to the reasonable belief Jeffries was involved in criminal activity. Jeffries was simply walking along a public street in Pittsburgh in broad daylight and when he saw a police officer he knew, he 'quickened his pace' and started to run when the officer began to chase him. This is not enough to justify a seizure under *Terry*, as interpreted by this Court, absent some other factor which would give rise to suspicion of criminal conduct.

Thus, it is clear the police had no right to 'arrest' or 'seize' Jeffries and the action of the police in chasing him and subsequently arresting him was a violation of his Fourth Amendment rights.

. . .

... The causative factor in the abandonment presently under consideration was the unlawful and coercive action of the police in chasing Jeffries in order to seize him. This is not a situation where the party spontaneously abandons the property upon sight of the police, or where the police are not involved in an unlawful act towards the accused. *Cf. Commonwealth v. Shaffer*, 447 Pa. 91, 288 A.2d 727 (1972). We instantly have an unlawful act which motivated the abandonment.

*Id.* 454 Pa. at 325-27, 311 A.2d at 917-918.

In *Commonwealth v. Barnett*, 484 Pa. 211, 398 A.2d 1019 (1979), a case factually similar to *Jeffries*, our supreme

court again reviewed a forced abandonment question within the context of a police chase. The *Barnett* court looked to a prior Pennsylvania Supreme Court case to analyze whether the defendant, who had not been ordered to halt by the police or stopped in any other way, was in fact seized or merely approached for questioning by the officers when the chase ensued.[1] The court quoted from *Commonwealth v. Jones*, 474 Pa. 364, 371, 378 A.2d 835, 839 (1977), as follows:

> ... If a citizen approached by a police officer is ordered to stop or is physically restrained, obviously a 'stop' occurs. Equally obvious is a situation where a police officer approaches a citizen and addresses questions to him, the citizen attempts to leave, and the officer orders him to remain or physically restrains him; here too a 'stop' occurs. A more difficult situation arises where no order or physical restraint is involved and the citizen does not attempt to walk away.

Clearly, for the *Jones* court, a police officer's mere command to stop represented an obvious seizure for *Terry* purposes.

Applying the *Jones* analysis to the facts before it, the *Barnett* court determined that the defendant had been seized and then utilized a *Terry* approach to analyze the legality of the police conduct. I find the following language instructive.

> In the instant case, the facts are clear that Officers Devereau and Wallace were attempting to stop appellee. As there was nothing on which to base a belief that criminal activity was afoot, appellee was free to walk away. Yet, when he attempted to leave, the officers chased him down the street. Under these circumstances, the suppression court was correct in finding that the officers did more than merely approach appellee for the purpose of allowable questioning. The police conduct

1. *See also, Commonwealth v. Bulling*, 331 Pa.Super. 84, 480 A.2d 254 (1984) (finding no evidence of coercive or unlawful police activity when defendants dropped stolen credit cards when officers parked car and began walking toward them without an order to halt or any chase).

here amounted to a coercive factor which was the main reason that appellee abandoned the weapon.

*Barnett,* 484 Pa. at 215–16, 398 A.2d at 1021.

In *Commonwealth v. Jones, supra,* our supreme court adopted a wholly objective standard for determining what amount of force constitutes the initiation of a *Terry* stop. As noted above, the court recognized that the line of distinction between a police officer merely approaching a citizen for questioning and actually making a forcible stop is not subject to precise definition because of the myriad situations by which police and citizens encounter each other on the street. For purposes of analyzing when an encounter escalates into a forcible stop, the court looked to the totality of circumstances in determining whether a reasonable person would have felt that his freedom was restrained.[2]

> Thus, to determine when a 'stop' has occurred in the more difficult situation all of the circumstances which may in any way evidence a show of authority or exercise of force including such subtle factors as the demeanor of the police officer, the location of the confrontation, the manner of expression used by the officer in addressing the citizen, and the content of the interrogatories or statements must be examined. Once this factual examination has been made, the pivotal inquiry is whether, considering all of the facts and circumstances evidencing an exercise of force, 'a reasonable man, innocent of any crime, would

**2.** The court noted that an objective standard was the better test for two reasons:

(1) a wholly subjective test would require police investigating crime to modify their behavior towards each and every person they approach and thereby result in the police being unable to predict what type of behavior on their part will result in a seizure, *cf. Hicks v. United States,* 127 U.S.App.D.C. 209, 382 F.2d 158 (1967); and,

(2) a subjective-objective test, which would require the accused to subjectively conclude he was being restrained and to conclude so reasonably, would not serve the deterrent purpose of the exclusionary rule because a policeman might escalate his exercise of force when confronting persons he believes are not easily restrained by authority.

have thought [he was being restrained] had he been in the defendant's shoes.'

*Jones,* 474 Pa. at 372–73, 378 A.2d at 839–840 (citation omitted).

In *Commonwealth v. Williams,* 287 Pa.Super. 19, 429 A.2d 698 (1981), *Jones* was again found to be instructive on the question of when a coercive stop occurs. For purposes of applying a *Terry* analysis, the *Williams* court relied upon the objective reasonable person inquiry as enunciated in *Jones.* As noted by Judge Hoffman, this reasonable person inquiry was *subsequently* adopted by the U.S. Supreme Court in *U.S. v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). *Mendenhall* recognized the varied nature of police/citizen encounters and attempted to establish guidelines for judging the coercive nature of such interactions.

We adhere to the view that a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained. Only when such restraint is imposed is there any foundation whatever for invoking constitutional safeguards. The purpose of the Fourth Amendment is not to eliminate all contact between the police and the citizenry, but 'to prevent arbitrary and oppressive interference by enforcement officials with the privacy and personal security of individuals.' *United States v. Martinez–Fuerte,* 428 U.S. 543, 554, 49 L.Ed.2d 1116, 96 S.Ct. 3074. As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification.

Moreover, characterizing every street encounter between a citizen and the police as a 'seizure,' while not enhancing any interest secured by the Fourth Amendment, would impose wholly unrealistic restrictions upon a wide variety of legitimate law enforcement practices. The Court has on other occasions referred to the acknowledged need for police questioning as a tool in the effective enforcement

of the criminal laws. 'Without such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved. In short, the security of all would be diminished. *Haynes v. Washington*, 373 U.S. 503, 515, [83 S.Ct. 1336, 1344, 10 L.Ed.2d 513].' *Schneckloth v. Bustamonte*, 412 U.S. [218], at 225, 36 L.Ed.2d 854, 93 S.Ct. 2041 [2046].

We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *See Terry v. Ohio, supra,* [392 U.S.] at 19, n. 16, 20 L.Ed.2d 889, 88 S.Ct. 1868 [1879, n. 16], 44 Ohio Ops.2d 838; *Dunaway v. New York*, 442 U.S. 200, 207, and n. 6, 60 L.Ed.2d 824, 99 S.Ct. 2248 [2253, and n. 6]; 3 W. LaFave, Search and Seizure 53–55 (1978).

*Id.* 446 U.S. at 553–55, 100 S.Ct. at 1877, 64 L.Ed.2d at 509.

In *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), the U.S. Supreme Court reaffirmed the reasonable person inquiry as a test for the coerciveness of police conduct in a forced abandonment case. In that case, the defendant began to flee after seeing a police vehicle. The police drove alongside him for a brief time to investigate. During this time, the defendant discarded the contraband. The Supreme Court applied the reasonable person inquiry in determining that the police conduct was not so intimidating that a reasonable person could have believed his freedom was curtailed.

In *Commonwealth v. Brown*, 388 Pa.Super. 187, 565 A.2d 177 (1989), this court cited to *Chesternut* and *Jones* in

analyzing yet another forced abandonment situation. In reviewing the settled law in this Commonwealth, Judge Beck stated:

> We note that the *Chesternut* decision is consistent with Pennsylvania search and seizure jurisprudence. For many years, Pennsylvania courts have applied a similar test in order to determine whether a defendant abandoned property as a result of an illegal police seizure of the person.

*Id.*, 388 Pa.Superior Ct. at 192, 565 A.2d at 179. *Also see Commonwealth v. Martinez*, 403 Pa.Super. 125, 588 A.2d 513 (1991).

What seems abundantly clear from a careful examination of the case law and the policy considerations formulated therein, is that to date in this jurisdiction a show of authority by a police officer does, in fact, represent a seizure for purposes of constitutional inquiry, and that this inquiry has consistently centered upon an objective reasonable person test.

Consequently, Justice Scalia's opinion in *Hodari* represents a marked departure from this objective test as adopted by our own supreme court in *Jones*. The majority in *Hodari* saw the issue as whether the police officer's pursuit qualified as a "seizure." The court characterized the narrow question to be decided as "whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield." *Hodari* 111 S.Ct. at 1550.

Justice Scalia, speaking for the court, determined "the word 'seizure' readily bears the meaning of laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful." *Hodari* 111 S.Ct. at 1550. Hence the court held that a show of authority by a police officer such as a command to halt or stop when directed at a fleeing suspect who does not heed the command does not represent a "seizure" for Fourth Amendment purposes and therefore the discarding of contraband during the ensuing chase may not be characterized as a

forced abandonment.[3] In discussing the court's prior *Mendenhall* test for "seizure," it was stated

> Respondent contends that his position is sustained by the so-called *Mendenhall* test, formulated by Justice Stewart's opinion in *United States v. Mendenhall*, 446 U.S. 544, 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497] (1980), and adopted by the Court in later cases, see *Michigan v. Chesternut*, 486 U.S. 567, 573 [108 S.Ct. 1975, 1979, 100 L.Ed.2d 565] (1988); *INS v. Delgado*, 466 U.S. 210, 215 [104 S.Ct. 1758, 1762, 80 L.Ed.2d 247] (1984): 'A person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' 446 U.S., at 554 [100 S.Ct., at 1877]. See also *Florida v. Royer*, 460 U.S. 491, 502 [103 S.Ct. 1319, 1327, 75 L.Ed.2d 229] (1983) (opinion of White, J.). In seeking to rely upon that test here, respondent fails to read it carefully. It says that a person has been seized 'only if,' not that he has been seized 'whenever'; it states a *necessary*, but not a *sufficient* condition for seizure—or, more precisely, for seizure effected through a 'show of authority.' *Mendenhall* establishes that the test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person. Application of this objective test was the basis for our decision in the other case principally relied upon by respondent, *Chesternut, supra*, where we concluded that the police cruiser's slow following of the defendant did not convey the message that he was not free to disregard the police and go about his business. We did not address in *Chesternut*, however, the question whether, if the *Mendenhall* test was met—if the message that the defendant was not free to leave *had* been conveyed—a Fourth Amendment sei-

---

3. Under Justice Scalia's reasoning, if the police officer merely touches the suspect before flight, a seizure would occur.

zure would have occurred. See 486 U.S., at 577 [108 S.Ct., at 1981] (Kennedy, J., concurring).

*Hodari* 111 S.Ct. at 1551 (emphasis in original).

In dissent, Justice Stevens takes issue with the majority's interpretation of the *Mendenhall* test and finds that such a narrow interpretation marks an unnecessary departure from Fourth Amendment case law as far back as the Supreme Court decisions in *Terry* and *Katz v. U.S.*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).[4]

The Court fares no better when it tries to explain why the proper definition of the term 'seizure' has been an open question until today. In *Terry*, in addition to stating that a seizure occurs 'whenever a police officer accosts an individual and restrains his freedom to walk away,' the Court noted that a seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen....' The touchstone of a seizure is the restraint of an individual's personal liberty *'in some way.'* Today the Court's reaction to respondent's reliance on *Terry* is to demonstrate that in 'show of force' cases no common-law arrest occurs unless the arrestee *submits.* That answer, however, is plainly insufficient given the holding in *Terry* that the Fourth Amendment applies to stops that need not be justified by probable cause in the absence of a full-blown arrest.

In *United States v. Mendenhall,* the Court 'adhere[d] to the view that a person is "seized" only when, by means of physical force or a show of authority, his freedom of movement is restrained.' The Court looked to whether the citizen who is questioned 'remains free to disregard the questions and walk away,' and if she is able to do so, then 'there has been no intrusion upon that person's liberty or privacy' that would require some 'particularized and objective justification' under the Constitution. The

**4.** The court in *Katz* concluded that the use of electronic surveillance did constitute a seizure and, therefore, Fourth Amendment protections were triggered.

test for a 'seizure,' as formulated by the Court in *Mendenhall*, was whether, 'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' ... The Court's unwillingness today to adhere to the 'reasonable person' standard, as formulated by Justice Stewart in *Mendenhall*, marks an unnecessary departure from Fourth Amendment case law.

. . . . .

... Finally, it is noteworthy that in *Michigan v. Chesternut* the State asked us to repudiate the reasonable person standard developed in *Terry, Mendenhall, Delgado,* and *Royer.* We decided, however, to 'adhere to our traditional contextual approach.' In our opinion, we described Justice Stewart's analysis in *Mendenhall* as 'a test to be applied in determining whether "a person has been 'seized' within the meaning of the Fourth Amendment" ' and noted that '[t]he Court has since embraced this test.' Moreover, in commenting on the virtues of the test, we explained that it focused on the police officer's conduct:

> 'The test's objective standard—looking to the reasonable man's interpretation of the conduct in question— allows the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment.' *Id.* [446 U.S.] at 574 [100 S.Ct. at 1887].

Expressing his approval of the Court's rejection of Michigan's argument in *Chesternut,* Professor LaFave observed:

> 'The "free to leave" concept, in other words, has nothing to do with a particular suspect's choice to flee rather than submit or with his assessment of the probability of successful flight. Were it otherwise, police would be encouraged to utilize a very threatening but sufficiently slow chase as an evidence-gathering technique whenever they lack even the reasonable suspicion needed for a *Terry* stop.' 3 W. LaFave, Search and Seizure § 9.2, p. 61 (2d ed. 1987, Supp.1991).

Whatever else one may think of today's decision, it unquestionably represents a departure from earlier Fourth Amendment case law.... Moreover, by narrowing the definition of the term seizure, instead of enlarging the scope of reasonable justifications for seizures, the Court has significantly limited the protection provided to the ordinary citizen by the Fourth Amendment.

*Hodari* 111 S.Ct. at 1556–59 (citations omitted) (emphasis in original).

In line with our mandate in *Edmunds,* I find the views expressed by Justice Stevens, in dissent, far more consonant with the long standing constitutional law of search and seizure in this Commonwealth. This line of precedent defines clearly the meaning of seizure and the implications of constitutional protections in this Commonwealth. To adopt Justice Scalia's rationale in *Hodari* would radically alter the long line of precedent in this jurisdiction on the definition of forced abandonment. I would argue strenuously that this is something we as an intermediate appellate court may not do, and as a matter of Pennsylvania Constitutional jurisprudence it is unwise to do.

To the extent that the majority states *Hodari* has overruled past precedent in this Commonwealth *sub silentio,* preventing this court from addressing the matter on our own, I vehemently disagree. Even though a state constitutional provision has been interpreted as co-extensive with a federal constitutional provision, "[w]hen confronted with a change in federal precedent a state court need not, however, continue to adhere to the concept of co-extensiveness. Several courses are open to a state court. The state court is free to reinterpret the source of the prior state constitutional requirement." [5] *See Edmunds, supra; Commonwealth v. Zettlemoyer,* 500 Pa. 16, 454 A.2d 937 (1982); *Commonwealth v. Henderson,* 496 Pa. 349, 437 A.2d 387 (1981); *Commonwealth v. Triplett,* 462 Pa. 244, 341 A.2d

**5.** B. Ledewitz, "The State Constitution Assumes New Importance," *Pennsylvania Law Journal Reporter,* Vol. 7, No. 42 (November 5, 1984) at 1, 10.

62 (1975). Echoing the majority's concern for our proper role as an intermediate court, I would propose that "until a change in federal constitutional requirements is ratified by the Pennsylvania Supreme Court, a lower Pennsylvania court must treat an analogous state constitutional claim as a matter of independent constitutional interpretation, no matter how closely federal authority has been followed in the past."[6] *See Zettlemoyer, supra; Henderson, supra;* and *Triplett, supra.*[7]

Returning to the instant case, I believe we must apply the objective standard adopted by our Supreme Court in *Jones* to answer the first question in our two-step inquiry; i.e., whether appellant was seized at the time he discarded the firearm. Specifically, I believe we are required to resolve whether a reasonable person in appellant's position would have concluded that his freedom was curtailed by the officer's conduct in ordering him to stand fast, then chasing him when he ran. I conclude that appellant had been seized where, in exercising his right to disregard the officer's order, appellant was nevertheless pursued and tackled by the police. My determination parallels that of our supreme court's assessment in *Jones, Jeffries,* and *Barnett* that a reasonable person would have felt he was not free to go about his business thereby implicating the protections of Article I, Section 8, of the Pennsylvania Constitution.

Proceeding to the second step of our analysis, I find that the constitutionality of the police conduct herein must be measured by the circumstances as they existed at the time of the initial show of authority—the officer's command to stand fast. Therefore, my analysis focuses on whether Officer Hoy had a reasonable suspicion that appellant was engaging in criminal activity.

6. *Id.*

7. Under the majority's analysis, if the Supreme Court were to overrule such landmark decisions as *Terry v. Ohio, supra,* or *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), major portions of Pennsylvania Constitutional jurisprudence regarding search and seizure claims and coerced confessions would fall as well.

The sum and substance of Officer Hoy's testimony at the suppression hearing was as follows: While on duty near the corner of Wayne and Chelton, he was approached by a civilian who said there was a black male in the parking lot of the Super Fresh and that he was acting suspiciously. Based on the civilian's description of the black male, the officer identified the appellant as he was exiting the parking lot. The officer then ordered appellant to stand fast and appellant, placing his left hand inside his pocket, started to run. The officer pursued him, for close to seventy-five yards, when appellant threw the firearm which he was carrying into the bushes. The firearm was retrieved by the officer and appellant was apprehended shortly thereafter by another officer in a patrol wagon.

The Commonwealth would argue that the information supplied to the officer by a disinterested civilian and the flight of appellant are two independent factors suggesting appellant's involvement in criminal activity. With regard to the first factor, the Commonwealth contends that a disinterested civilian's characterization of conduct as suspicious suggests in and of itself criminal activity. I disagree. It is not the civilian's assessment of the conduct which is relevant but rather the independent assessment of the report by the police officer. For it is the officer who must have formed the reasonable suspicion, based on articulable facts, that criminal activity was afoot. My review of Officer Hoy's testimony does not reveal any facts upon which he might have formed such a reasonable suspicion.

As to the second independent factor suggested by the Commonwealth that appellant's flight from police should be considered, I find *Jeffries* and *Barnett* controlling on this issue. Absent articulable facts which would have led Officer Hoy to conclude that appellant was involved in criminal activity as he exited the parking lot, appellant's flight cannot be used to justify a *Terry* stop as defined by Pennsylvania law. As in *Jeffries* and *Barnett,* I find that absent reasonable suspicion, the officer's actions in pursuing appellant were not only unlawful, but also the causative

factor in appellant's abandonment of the firearm. Consequently, the evidence should have been suppressed.

My belief that we should refuse to adopt the decision of the United States Supreme Court in *Hodari* does not represent a change or departure from the current state of the law within this jurisdiction; rather, it reaffirms the long line of precedent in this Commonwealth on the issue of forced abandonment, as it relates to the protections embodied in Article I, Section 8 of this Commonwealth's constitution. Consequently, I would reverse the judgment of sentence and remand the case for a new trial.