**UNITED STATES of America**

v.

**Charles M. RUSSELL, Appellant.**

**No. 80-1139.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 1, 1980.

Decided May 15, 1981.

Richard C. Bicki, Asst. U. S. Atty., Washington, D. C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry and Sylvia Royce, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

David E. Schreiber, Washington, D. C. (appointed by this Court), for appellant.

Before ROBINSON, WILKEY and GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

Defendant Charles M. Russell appeals his convictions for possession of heroin with intent to distribute, carrying a pistol without a license, and possession of a firearm after a prior felony conviction. 21 U.S.C. § 841(a) (1976); D.C.Code § 22–3204 (1973); 18 U.S.C. app. § 1202(a)(1) (1976). We affirm the two gun-related convictions, but reverse the conviction for possession of heroin with intent to distribute.

## I. FACTS

On September 12, 1979, Officers Michael O. Medaris and Rudolph C. Goddard stopped defendant Russell because the car he was driving lacked a front license plate. When Russell opened the glove compartment to show the car's registration, Goddard saw a "clear plastic package containing a white powder" and a "brown, change-type bag" inside the compartment. Suppression Hearing Transcript at 43. Goddard believed that the white powder was heroin and recognized the brown bag as the type of bag that, in his experience, was "commonly used to carry marijuana." *Id.* Goddard reached into the car to seize the package and change-type bag. Russell then attempted to close the glove compartment, but Goddard ordered him to "back off" and seized the suspect packets. *Id.* at 51. Russell thereupon exclaimed several times "It's only sugar; it's nothing." *Id.* at 25, 64.

Medaris and Goddard ordered Russell and Alvin Thomas, who was seated in the front passenger seat, out of the car. Medaris then reached under the front passenger seat and seized a paper bag containing a nine-millimeter Browning automatic handgun.[1]

---

1. Russell recalled that Medaris seized the bag containing the handgun before ordering him and Thomas out of the car. Suppression Hear-

Medaris testified that he searched under the seat because he and Goddard had seen Russell, before stopping the car, dip his right shoulder in a way that suggested he was concealing something under the seat. Suppression Hearing Transcript at 11, 19–21, 47–49.

By this time, Russell and Thomas were in the custody of two back-up officers.[2] An officer searched Russell and seized from his waistband a cigarette pack containing seven glassine envelopes filled with white powder. The officers also searched the remainder of the car and seized a "large brown paper . . . grocery-type bag" from the hatchback. *Id.* at 12.[3] In the bag they found four more glassine envelopes of white powder, three tinfoil packets containing white powder, some measuring spoons and a strainer with a white residue on them, and a heat sealer. *Id.* at 12–13.

Subsequent analysis revealed that the glassine envelopes found on Russell and in the grocery bag contained heroin. The strainer and measuring spoons also showed traces of heroin. The clear plastic package seized from the glove compartment, however, contained only lactose. Trial Transcript of Dec. 13, 1979, at 16–17.

Russell moved to suppress the evidence found on his person and in the car. After the district court denied this motion, a jury convicted Russell of possession of heroin, possession of heroin with intent to distribute, and carrying a pistol without a license. In a separate bench trial, the district judge

convicted Russell of possession of a firearm after a felony conviction. After both trials were over, the court granted the Government's motion to vacate the simple possession conviction. Russell appeals the remaining three convictions.

## II. ISSUES ON APPEAL

[1] Russell argues first that the police lacked probable cause to search the car. This contention lacks merit. The absence of a license plate justified the initial stop of the car.[4] After Russell opened the glove compartment, Officer Goddard saw in plain view two packets that, to his trained eye, signaled the presence of heroin and marijuana.[5] Russell attempted to close the glove compartment lid on Goddard's hand, heightening the officers' suspicion that the packages contained contraband. Together, these circumstances gave the officers probable cause to believe that drugs were in the car and, therefore, to search the car without a warrant. *See Chambers v. Maroney*, 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

Russell urges that, before the police searched the automobile, they should have field tested the white substance found in the glove compartment. If they had done so, they would have discovered that the glassine package contained sugar, not heroin. They might then have lacked probable cause to search further. Probable cause, however, rests on a "reasonable probability" that a crime has been committed,

---

ing Transcript at 57–58. However, both Goddard and Medaris testified that the gun was seized after Russell and Thomas left the car. *Id.* at 11, 23–24, 33–34, 51–53. The order of the two events is not material to our decision.

2. Two rear seat passengers had also been ordered out of the car. They are not involved in this appeal.

3. At trial, Goddard testified that the front of the grocery bag was covered by a blanket prior to seizure. Trial Transcript of Dec. 12, 1979, at 61. This fact did not emerge during the suppression hearing and is not necessary to our disposition.

4. *Delaware v. Prouse*, 440 U.S. 648, 659–61, 99 S.Ct. 1391, 1399–1400 (1979); *United States v. Johnson*, 442 F.2d 1239 (D.C.Cir.1971); *United*

*States v. Montgomery*, 561 F.2d 875, 879–80 (D.C.Cir.1977).

District of Columbia regulations require locally registered cars to display both front and back license plates. 32 D.C. Rules & Regulations § 3.315(a) (1972).

5. Goddard testified that he had participated in approximately thirty arrests where heroin was packaged in glassine envelopes similar to the one spotted in the glove compartment. Suppression Hearing Transcript at 44. He had participated in well over a hundred cases where marijuana was found in "change-type" bags. Goddard believed this was "the most commonly packaged form of marijuana." *Id.* at 43.

not on certainty that illegal activity is afoot. *United States v. Brown*, 463 F.2d 949, 951 (D.C.Cir.1972). We would unduly retard legitimate law enforcement methods if we held that on the facts before us a stop to field test was obligatory. *Cf. Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

■ Russell next challenges the warrantless searches of the paper bag containing the gun and of the grocery bag found in the hatchback.[6] In *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979), the Supreme Court held that the automobile exception to the warrant requirement cannot justify the warrantless search of luggage seized from a car, even if that exception justifies a warrantless search of the car itself. Once the luggage is in police hands, a warrantless search is permissible only if some other exception justifies that course. Recently this court ruled en banc that the reasoning of *Sanders* applies to a "closed, opaque paper bag" as well as to more sturdy containers. *United States v. Ross*, 655 F.2d 1159, 1161 (D.C.Cir. 1981). We must determine, therefore, whether an exception to the warrant requirement other than the automobile exception justifies the warrantless search of the two paper bags seized from the car.

■ We turn first to the search of the bag containing the gun. That search was justified, we believe, because the contents of the package could be inferred the moment the bag was seized. On cross-exami-

nation at trial, Officer Medaris affirmed that when he reached under the front seat of the car, he grabbed the gun by its barrel.[7] Both *Sanders* and *Ross* recognized an exception to the warrant requirement when "the[ ] contents [of a container] can be inferred from [its] outward appearance." *Sanders*, 442 U.S. at 765 n.13, 99 S.Ct. at 2593 n.13, *quoted in Ross, supra*, 655 F.2d at 1170. Officer Medaris unavoidably felt the outline of a gun as he drew the paper bag out from under the seat. Uncovering what his sense of touch revealed did not require a warrant. *See United States v. Portillo*, 633 F.2d 1313, 1320 (9th Cir. 1980) (police officer rested hand on bag lying in car trunk and felt outline of handgun).

■ No such circumstance justifies the warrantless search of the grocery bag found in the hatchback. There is no evidence that an officer inferred the contents of the bag from its shape or feel. Nor is there any evidence that the bag was open and its contents in plain view. The Government's sole justification for the warrantless search of the grocery bag is that Russell lacked a reasonable expectation of privacy in the bag since paper bags offer "only minimal protection against accidental or deliberate intrusions." Brief for Appellee at 20. In *United States v. Ross*, however, we declined to adopt such an "unworthy container" rule. 655 F.2d at 1169–71.[8] Under our decision in *Ross*, no existing exception to the warrant requirement covers the warrantless search of the grocery bag. We therefore hold that the evidence found in the bag should have been suppressed.

---

6. Russell does not contest search of the packages seized from the glove compartment. He does challenge the search of his person, but that issue is quickly dispatched. Russell was not searched until after the officers had seized the suspected narcotics from the glove compartment. At that time they had probable cause to arrest him. Even if Russell was not formally arrested until after the search, therefore, the search was justified as incident to arrest. *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980); *United States v. Brown*, 463 F.2d 949, 950 (D.C.Cir. 1972). There is no basis, moreover, for Russell's claim that the search of his person was the "direct result of [an] illegal search." Brief for Appellant at 12.

7. Trial Transcript of Dec. 12, 1979, at 104–05. *See also id.* at 102 (Medaris' affirmation on cross-examination that he "felt under the right front passenger seat and felt a gun"). Similarly, at the suppression hearing, Medaris did not expressly state that he had felt the gun through the bag. Instead, he referred directly to his seizure of a "Browning 9mm automatic handgun." Suppression Hearing Transcript at 11, 23–24. That practical representation suggests no violation of Fourth Amendment strictures.

8. Before reaching that issue, we held that *Sanders* applies retroactively. 655 F.2d at 1162–64. The retroactivity of *Sanders* is not at issue here since that case was decided on June 20, 1979, and the contested search occurred on September 12, 1979.

The Government points out, however, that the contents of the grocery bag related only to the conviction for possession of heroin with intent to distribute. The strainer, heat sealer, measuring spoons, and packets of heroin cannot have contributed to Russell's conviction on either of the weapon charges. We therefore affirm the latter two convictions and reverse only the conviction for possession of heroin with intent to distribute.

## CONCLUSION

In accordance with the foregoing, the decision of the district court is affirmed in part and reversed in part.

*So ordered.*