633 A.2d 172

### In the Interest of S.D.

### Appeal of S.D.

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Nov. 5, 1993.

578

John W. Packel, Owen W. Larrabee, Asst. Public Defenders, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., participating party.

Before OLSZEWSKI, KELLY and JOHNSON, JJ.

OLSZEWSKI, Judge:

On October 31, 1992, at 5:25 a.m., Police Officer Jose Acevedo spoke to a pedestrian who claimed there were two armed black men with drugs around the corner. Approximately fifty feet from where he received this information, Officer Acevedo observed appellant S.D. standing with another man. No one else was in the vicinity. Since Acevedo had been told they were armed, he immediately performed a "patdown" search during which he felt a large hard object in S.D.'s pocket. He then removed a clear plastic bag containing 50 plastic vials of crack cocaine. N.T. 12/8/92 at 5–10, 21. S.D. was arrested and charged with possession of a controlled substance with intent to deliver and simple possession. S.D. filed a motion to suppress the cocaine which was heard before the Honorable Sheldon C. Jelin. The motion was denied and S.D. was tried and adjudicated delinquent. This timely appeal from the adjudication of delinquency followed.

 S.D.'s sole contention on appeal is that the trial court erred in denying his motion to suppress the fifty vials of crack cocaine. On appeal from a motion to suppress, we only review whether the record supports the trial court's factual findings and whether the trial court's legal conclusions drawn from the facts are in error. *Commonwealth v. Merkt*, 411 Pa.Super. 127, 600 A.2d 1297 (1992); *Commonwealth v. Medley*, 531 Pa. 279, 282, 612 A.2d 430, 432 (1992). In this case, we must determine the validity of the trial court's legal conclusion that Officer Acevedo had reasonable suspicion to stop and frisk S.D. As this Court has stated,

> [p]ursuant to the landmark decision of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a police officer may temporarily detain a person if he observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot.

*Commonwealth v. Patterson*, 405 Pa.Super. 17, 20, 591 A.2d 1075 (1991). The reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, but the detaining officer must have more than a hunch as the basis for his stop. *Id.* "Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability." *Alabama v. White*, 496 U.S. 325, 329, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990).

 Guided by this standard, our review of the record reveals that the trial court was presented with sufficient evidence to justify both the initial investigatory stop of S.D. and an immediate frisk. At the outset, we note that a police officer need not personally observe the illegal or suspicious conduct which lead him or her to believe that criminal activity is afoot and that a person is armed and dangerous. *Commonwealth v. Jackson*, 359 Pa.Super. 433, 519 A.2d 427 (1986). Under such circumstances, we must consider "the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed." *Id.* at 438, 519 A.2d at 430; *Commonwealth*

*v. Whelton,* 319 Pa.Super. 42, 465 A.2d 1043 (1983). Viewing these factors under the totality of the circumstances, *Terry, supra,* we find that the informant gave sufficiently reliable information to justify the stop.

Officer Acevedo acted pursuant to a tip from a concerned citizen who claimed to have witnessed the fact that S.D. and another man were armed and possessed illegal narcotics.[1] Although the informant only described the suspects as two black males, S.D. and the other man were the only people in the general vicinity. Moreover, the men were standing exactly where the informant said they would be standing, approximately fifty feet away. N.T. 12/8/92 at 6, 10. In certain situations even a very limited description may justify an investigatory search. *See Commonwealth v. Chase,* 394 Pa.Super. 168, 575 A.2d 574 (1990) (general description corroborated by suspect's presence at "precise location" indicated); *Commonwealth v. White,* 358 Pa.Super. 120, 516 A.2d 1211 (1986).

We must also take into consideration that the area where these events took place was an area of high drug incidence and that the encounter took place at 5:25 in the morning. *See Jackson,* 359 Pa.Super. at 439, 519 A.2d at 431 ("the time and place of an encounter may indicate that a person, conspicuous through their solitary presence at a late hour or desolate location, may be the object of a search"); *Commonwealth v. Cortez,* 507 Pa. 529, 491 A.2d 111 (1985), *cert. denied,* 474 U.S. 950, 106 S.Ct. 349, 88 L.Ed.2d 297 (1985) (sufficient cause to stop arising out of defendant's location in an alley in the early hours of a snowy morning when streets were empty). The time and place of the encounter in this case provided an independent basis for the officer to act on the informant's tip.

1. "[I]dentified citizens who report their observations of criminal activity to police are assumed to be trustworthy, in the absence of special circumstances." *Commonwealth v. Lutz,* 298 Pa.Super. 473, 444 A.2d 1281 (1982); *see also Commonwealth v. Bruner,* 388 Pa.Super. 82, 564 A.2d 1277 (1989) (trustworthiness of information may be presumed when source is an eyewitness). This alone, provides justification to reject S.D.'s assertion that the informant's tip was not sufficiently reliable to justify the officer's investigatory search.

*See Patterson* 405 Pa.Super. at 21, 591 A.2d at 1078 (combination of the neighbors' reports and suspicious heavy foot traffic during early morning hours in dark alley of suspected "crack house" sufficiently justified *Terry* stop); *Commonwealth v. Williams,* 298 Pa.Super. 466, 471, 444 A.2d 1278, 1280 (1982) ("officer may obtain sufficient information from an informant . . . that, when coupled with the circumstances, gives rise to a reasonable suspicion that the appellant is presently involved in criminal activity").

■ Having legally stopped S.D. for investigation, Officer Acevedo was justified in performing an immediate pat-down search for his protection. To justify a frisk incident to an investigatory stop, the officer must point to "specific and articulable facts indicating the person they intend to frisk may be armed and dangerous; otherwise, the talismanic use of the phrase 'for our own protection' becomes meaningless." *Patterson*, 405 Pa.Super. at 21, 591 A.2d at 1078. An investigatory stop is permissible under this standard when the officer has reason to believe "that the person they intend to frisk may be armed." *Jackson* 359 Pa.Super. at 439, 519 A.2d at 431; *see also Commonwealth v. Capers*, 340 Pa.Super. 136, 489 A.2d 879 (1985) (search justified when suspect is reported to possess or has used a weapon). Here, the frisk was justified since the officer was informed by an alleged eyewitness that the suspects were armed. Alternatively, the frisk was justified on the basis that the officer reasonably believed that the suspects were dealing drugs. In fact, this Court adopted a new rule in *Patterson*, stating that "[t]oday we additionally join the growing number of courts who have taken judicial notice of the fact that drug dealers are likely to be armed and dangerous." *Id.* 405 Pa.Super. at 22, 591 A.2d at 1078.

■ Finally, we turn to S.D.'s contention that Officer Acevedo exceeded the scope of a permissible pat-down search when he retrieved the cocaine vials from his pocket. The scope of a *Terry* search is very limited since its sole justification "is the protection of the police officer and others nearby, . . . it must therefore be confined in scope to an intrusion reasonably

designed to discover guns, knives, clubs, or other hidden instruments for the assault of a police officer." *Commonwealth v. Canning,* 402 Pa.Super. 438, 440, 587 A.2d 330, 331 (1991) *(citing Terry v. Ohio, supra ).* Under the law of this Commonwealth, a more intrusive search of a suspect's person following a protective pat-down search would only be justified under a *Terry* analysis where the officer reasonably believed he had felt what appeared to be a weapon. *See In Interest of Dixon,* 356 Pa.Super. 105, 514 A.2d 165 (1986) (scope of *Terry* search exceeded where there was no evidence officer reasonably believed suspect was armed and dangerous and where heart-shaped charm discovered during search could not reasonably be mistaken for a weapon); *Canning, supra* (assuming officer had probable cause to frisk suspect, search was not confined to items which could have reasonably appeared to be weapons where items retrieved from suspect's pocket included two small plastic bags containing white powder and marijuana leaves); *Commonwealth v. Marconi,* 408 Pa.Super. 601, 597 A.2d 616 (1991), *alloc. denied* 531 Pa. 638, 611 A.2d 711 (1992) (scope exceeded where pliable plastic packet containing aspirin or button-sized amount of cocaine retrieved).

Recently, however, the Supreme Court of the United States adopted the "plain feel" exception to the warrant requirement, holding that a police officer may seize non-threatening contraband detected through the sense of touch during a protective pat-down search. *Minnesota v. Dickerson,* —— U.S. ——, ——, 113 S.Ct. 2130, 2132, 124 L.Ed.2d 334 (1993). Such action is permissible, the Court concluded, so long as the search stays within the bounds marked by *Terry.* Under the plain view doctrine, the seizure of contraband which is left in open view and observed by a police officer from a lawful vantage point neither invades a legitimate expectation of privacy nor constitutes a "search" within the meaning of the Fourth Amendment. *Id.; Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion); *Illinois v. Andreas,* 463 U.S. 765, 103 S.Ct. 3319, 77 L.Ed.2d 1003 (1983); *South Dakota v. Opperman,* 428 U.S. 364, 96 S.Ct.

3092, 49 L.Ed.2d 1000 (1976). The Court reasoned that the plain view doctrine:

> has an obvious application by analogy to cases in which an officer discovers contraband through the sense of touch during an otherwise lawful search ... If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context.

*Dickerson, supra* —— U.S. at ——, 113 S.Ct. at 237. Thus, under the federal standard, if an officer lawfully "pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain view context." *Id.* at ——, 113 S.Ct. at 2137.

Prior to *Dickerson,* however, a panel of this Court expressed reservation with the so-called "plain feel" exception to the warrant requirement when applied to the search of an individual. *Commonwealth v. Marconi, supra.* The Court stated:

> We might be inclined to agree that when a police officer feels the shape of a gun concealed in a bag, probable cause to search is present. *U.S. v. Russell,* 655 F.2d 1261 (D.C.Cir.1981), vacated in part by *U.S. v. Russell,* 670 F.2d 323 (D.C.Cir.1982); *U.S. v. Portillo,* 633 F.2d 1313 (9th Cir.1980). However, we are not willing to use this rationale to justify a search of an individual *where probable cause cannot exist.*

*Id.* 408 Pa.Super. at 614–15, 597 A.2d at 623 (emphasis in original). Writing for the majority, Judge Popovich addressed a rudimentary concern that police could assume any small object contained in a pocket could be drugs, noting the packet

of drugs actually seized had no discernable or distinctive characteristics. The sense of touch, he explained, "is not so definitive as the recognition of certain sounds, smells or tastes." *Id.* 597 A.2d at 623, n. 17. Judge Popovich therefore determined that during a cursory search for weapons, it would "constrain logic to conclude that a small packet could, with any sort of probability, be identified as an element of criminal activity." [2] *Id.; but see Marconi,* concurring opinion by Kelly, J. (where officer frisks pursuant to reasonable fear that suspect is involved in criminal activity and possesses weapons, and discovers contraband other than weapons, no purpose announced under *Terry* served by excluding such evidence at trial). In the proper case, we must determine whether *Dickerson* is applicable under the Pennsylvania Constitution. *See Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) (Pennsylvania courts are free to reject conclusions of United States Supreme Court so long as they remain faithful to minimum guarantees established by United States Constitution). This, however, is not such a case. [3]

While it is clear that Officer Acevedo was justified in performing a pat-down search, there is simply no evidence to sustain the validity of the subsequent intrusion into S.D.'s pocket to retrieve the vials of cocaine. Officer Acevedo testi-

**2.** The Court also noted that the plain view doctrine has traditionally been associated with seizures, not searches. *See, id.* (collecting cases).

**3.** In response to the concurring statement, we wish to merely emphasize that we are not deciding a constitutional question in this case. Rather, we merely acknowledge the rather unremarkable proposition that our Supreme Court has held that, in certain instances, the analogous provisions in our State Constitution provide more protection to our citizens than does the Federal Constitution. *Edmunds, supra.* We also recognize that our Court decided *Marconi* under the Federal Constitution, however, we might call to the concurrence's attention that *Marconi* acknowledged our State Constitution as well. *Marconi, supra* 408 Pa.Super. at 603, 597 A.2d at 617 n. 1. Thus, while the concurrence is entirely correct in asserting that *Marconi* is overruled insofar as it is inconsistent with *Dickerson,* we have no reason to believe that its analysis is not appropriate under our State Constitution. Furthermore, we feel that ignoring *Dickerson 's* existence in a case where the precise issue is whether a police officer properly seized narcotics during a *Terry* search would indicate that our inquiry in this very important case has been less than thorough, even where the parties have not brought it to our attention.

fied at the suppression hearing that he "felt a bulge in [S.D.'s] right pants pocket" during the pat-down search. N.T. 12/8/92 at 6. He then stated he retrieved a bag containing numerous crack cocaine vials. Although Officer Acevedo was told that the suspects were carrying weapons and drugs, he never indicated what it was he perceived he had felt. Without such evidence, we cannot sustain the trial court's conclusion that Officer Acevedo reached into S.D.'s pocket on the basis that he feared he had felt a weapon. Nor do we have occasion to explore the validity of the "plain feel" doctrine on the basis that Officer Acevedo recognized the vials as contraband. Consequently, we must conclude that the search exceeded the bounds of a *Terry* search in violation of S.D.'s constitutional rights.

For the foregoing reasons, the order denying S.D.'s motion to suppress physical evidence is reversed. Jurisdiction relinquished.

KELLY, J., concurs.

JOHNSON, J., dissents.

KELLY, Judge, concurring:

I am compelled to agree with the majority that the seizure herein was unconstitutional. I am equally compelled, however, to express my disagreement with the means by which the majority reaches this conclusion.

The question of whether and to what extent it may be appropriate for the courts of this Commonwealth to provide greater rights to the individual is, of course, subject to much debate fueled by the underlying disagreement as to the proper role of courts in general. As an intermediate appellate level court, we need not, indeed may not, engage in such a discourse. We are bound to view our role as the Supreme Court of our Commonwealth has directed. Fortunately, it has offered us clear guidance in that regard. The Supreme Court of Pennsylvania has taken great pains to explain that we are to construe the Pennsylvania Constitution as providing greater rights to its citizens than the federal constitution "only where

there is a compelling reason to do so." *Commonwealth v. Gray*, 509 Pa. 476, 484–85, 503 A.2d 921, 926 (1985). The parties must brief and the court must analyze four aspects of any claimed distinction between the constitutions:

1) text of the Pennsylvania constitutional provision;

2) history of the provision, including Pennsylvania case-law;

3) related case-law from other states;

4) policy considerations, including unique issues of state and local concern, and applicability within modern Pennsylvania jurisprudence.

*Commonwealth v. Edmunds*, 526 Pa. 374, 390, 586 A.2d 887, 895 (1991); *Commonwealth v. Peterfield*, 415 Pa.Super. 313, 320, 609 A.2d 540, 544 (1992), *appeal denied*, 533 Pa. 609, 618 A.2d 400 (1992); *Commonwealth v. Carroll*, 427 Pa.Super. 1, 628 A.2d 398 (1993) (*en banc*) (Cavanaugh, J. concurring). Although not stated expressly, it appears to be a necessary corollary to the Supreme Court's guidance in this important area of constitutional analysis, that if no compelling distinction may be found, the courts of this Commonwealth are not entitled to construe the Pennsylvania Constitution as providing any greater rights than the floor level minimum guaranteed by the United States Constitution, as construed by the United States Supreme Court.

Instantly, appellant has challenged the propriety of the seizure of drugs on his person under both the federal and state constitution. The minimum protections provided to appellant under the federal constitution have recently been clarified by the United States Supreme Court in *Minnesota v. Dickerson*, —— U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993). This, of course, is the final word as to the relevant constitutional guarantees under the United States Constitution. *See Cooper v. Aaron*, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed.2d 5 (1958). Under no circumstances may we question this holding or its applicability in Pennsylvania. *Id.* It is and will remain the law on the Fourth Amendment unless and until the United States Supreme Court reconsiders and rejects that holding. *Id.*

As the majority notes, the question of whether and to what extent the Pennsylvania Constitution is distinguishable from the federal constitution is not before us today. Neither party has properly briefed or advanced the issue, and we cannot do so for them. *Commonwealth v. Edmunds, supra.* Accordingly, this question is properly left for another day.

Nonetheless, the majority has interpreted in dicta the decision in *Commonwealth v. Marconi,* 408 Pa.Super. 601, 597 A.2d 616 (1991), *appeal denied,* 531 Pa. 638, 611 A.2d 711 (1992). I believe it has done so incorrectly.

In *Marconi* the Superior Court was not interpreting a provision of the Pennsylvania Constitution. Rather, the constitutional question in *Marconi* was raised solely under the Fourth Amendment to the United States Constitution. *Id.* at 628 n. 8, 597 A.2d at 630 n. 8 (Kelly, J., concurring). Quite simply, *Marconi* has been overruled to the extent that it conflicts with *Minnesota v. Dickerson, supra,* which is, as United States Supreme Court precedent, the final word on the issue. *Cooper v. Aaron, supra.*

Moreover, I do not believe that the majority in *Commonwealth v. Marconi, supra,* specifically rejected the concept that tactile impressions gleaned during a *Terry* stop may justify the seizure of contraband. In this regard, I believe the *Marconi* majority well summarized its position in the following excerpt:

[W]e do not hold that under certain circumstances the sense of touch could not be used as an accurate technique of identity. At times, perception through touch is a tool as definitive as perception through the other senses. However, *under the facts before us,* we decline to extend the "plain view doctrine" to encompass "plain touch."

*Commonwealth v. Marconi, supra* 408 Pa.Super. at 615 n. 17, 597 A.2d at 623 n. 17.

In any event, under the standard announced in *Minnesota v. Dickerson, supra,* the appellant's rights were violated by the seizure. The officer who arrested appellant and seized the evidence from his person did not in any way describe the

tactile impression he gleaned from his frisk of appellant. Far from the "immediately apparent" standard articulated in *Minnesota v. Dickerson, supra,* here the record adduced reveals nothing about the nature of the police officer's impression.[1] Under the Fourth Amendment, therefore, the seizure was unconstitutional.[2]

JOHNSON, Judge, dissenting.

I agree with my distinguished colleague that Officer Jose Acevedo was justified in conducting both an investigatory stop and an immediate frisk of the juvenile in this case. I cannot agree that the Honorable Sheldon C. Jelin committed any error in denying the motion to suppress physical evidence. Nor can I agree that a police officer must volunteer and affirmatively state "what it was he perceived he had felt" in order to withstand a suppression motion in a juvenile court proceeding. Accordingly, I must dissent.

At the adjudication hearing before Judge Jelin, Officer Acevedo testified as follows:

Q. Okay. Can you tell the judge what happened?

A. Sure. Your Honor, on that date and time I was on routine patrol and I received information about two black males armed with guns and narcotics.

---

1. For this reason, I disagree with the dissent. I note only that under the dissent's analysis it would seem that little could not be inferred from an officer's testimony. Given the otherwise amorphous nature of such testimony, it would appear that to meet the "immediately apparent" standard, an officer's testimony would need to be more, not less, specific regarding his or her perception. Moreover, although I agree that the officer's "beliefs" are not relevant, *see Commonwealth v. Tyrone Lee Williams,* 390 Pa.Super. 493, 506 n. 6, 568 A.2d 1281, 1287 n. 6 (1990), I am unaware of any authority which would allow us to infer that a mere "bulge" was specific enough or articulated sufficiently to support an objective assessment of probable cause to arrest. *Id.* It was the Commonwealth's burden to adduce additional testimony from which we could draw such inferences. The Commonwealth failed to do so.

2. Absent separate treatment pursuant to *Commonwealth v. Edmunds, supra,* it would be inappropriate at this time for us to hold that the seizure also violated Article I, Section 8 of the Pennsylvania Constitution.

Q. Officer, where did you get that information from?

A. From a passerby on Germantown and Diamond.

Q. What did you do with the information that passerby had given you?

A. After receiving that information, Your Honor, I went— around the corner on Marshall Street around to the twen- ty—2100 block of Germantown. When I observed this defendant (indicating) and another defendant.

I patted—I stopped them for investigation, at which time I felt a bulge in the defendant's right pants pocket, and I retrieved it and observed numerous crack vials, alleged narcotics, containing a white substance—white chunky sub- stance sealed with blue caps.

And the other defendant was frisked for my safety also and was recovered a—.

Motion to Suppress/Adjudicatory Hearing Transcript (M.S./ A.H.T.) December 8, 1992 at 6. At the conclusion of the direct examination of Officer Acevedo by the Assistant District At- torney on the motion to suppress, the following appears in the record:

MS. KRAUSE [ADA]: I have no further questions of this officer.

THE COURT: Cross-examination.

MS. ADAMS [Assistant Defender]: Just one moment.

(Whereupon, Ms. Adams conferred with the defendant off the record.)

MS. ADAMS: I don't have any questions, Your Honor.

THE COURT: Thank you. You may step down.

(Witness excused.)

*Id.* at 11.

In the suppression portion of this adjudication proceeding, the juvenile did not testify. S. Blake Adams, Assistant De- fender, did not cross-examine Officer Acevedo and did not challenge the veracity or reliability of his testimony at any point in the proceedings. Officer Acevedo's testimony that he felt a bulge in the juvenile's right pants pocket, following his

receiving information about two males armed with guns and narcotics is uncontested.

In adult criminal proceedings involving the denial of a motion to suppress, we must determine whether the factual findings mandated by Pa.R.Crim.P. 323(i) are supported by the record. *Commonwealth v. Medley*, 531 Pa. 279, 284, 612 A.2d 430, 432 (1992); *Commonwealth v. Sanchez*, 416 Pa.Super. 160, 166–67, 610 A.2d 1020, 1023 (1992), *appeal denied*, 533 Pa. 624, 620 A.2d 490 (1993). When the evidence supports the factual findings, we are bound by such findings; we may reverse only if the legal conclusions drawn therefrom are erroneous. *Id.* The Rules of Criminal Procedure do not apply to juvenile proceedings unless otherwise specifically provided. Pa.R.Crim.P. 1(a). Nevertheless, this Court has considered, without informed discussion of the point, the denial of a pre-hearing suppression motion in a juvenile proceeding. *See, e.g., In Interest of A.P.*, 421 Pa.Super. 141, 617 A.2d 764 (1992), *pet. for allow. of appeal* 8 E.Alloc.Dckt. 93 (January 6, 1993).

At the conclusion of the presentation of the Commonwealth's evidence on the pre-hearing suppression motion, Judge Jelin found that Officer Acevedo had both probable cause and reasonable suspicion to act in the manner in which he acted. M.S./A.H.T. at 15. In his Opinion filed February 16, 1993, Judge Jelin wrote, at page 4:

> While patting down the defendant, Officer Acevedo felt a bulge in the defendant's right pocket ... and retrieved 50 vials containing a white chunky substance. At that point in time, Officer Acevedo had "sufficient facts ... to warrant a prudent man in the belief that the person seized ha[d] committed, [was] committing or [was] about to commit a crime" and therefore, had probable cause to arrest the defendant. *Commonwealth v. Hicks*, 434 Pa. 153, 253 A.2d 276 (1989) [1969].

Judge Olszewski, after reviewing these facts and conclusions, states for the majority on this appeal:

Officer Acevedo testified at the suppression hearing that he "felt a bulge in [S.D.'s] right pants pocket" during the patdown search. N.T. 12/8/92 at 6. He then stated he retrieved a bag containing numerous crack cocaine vials. Although Officer Acevedo was told that the suspects were carrying weapons and drugs, he never indicated what it was he perceived he had felt. Without such evidence, we cannot sustain the trial court's conclusion that Officer Acevedo reached into S.D.'s pocket on the basis that he feared he had felt a weapon.

Majority Opinion at 176. I cannot agree with this conclusion.

The majority does not cite to any specific authority for its assertion that an affirmative statement as to the arresting officer's "perception" is a necessary element in sustaining a denial of a suppression motion. The question before us is the legitimacy of the suppression court's inference arising from the uncontradicted evidence that Officer Acevedo felt a bulge in the suspect's pocket while searching for weapons. The majority, by imposing a requirement concerning the officer's statement as to his perception or belief, removes from the suppression court its ability and authority to infer and draw conclusions where no contradictory statement is offered.

This case was submitted to our panel without oral argument. The novel position taken by my distinguished colleague, Judge Olszewski, is advanced in the Brief for Appellant, at the end thereof, with citations to *Commonwealth v. Marconi*, 408 Pa.Super. 601, 597 A.2d 616 (1991), *appeal denied*, 531 Pa. 638, 611 A.2d 711 (1992) and, by way of footnote, to *Commonwealth v. Canning*, 402 Pa.Super. 438, 587 A.2d 330 (1991) and *In the Interest of Dixon*, 356 Pa.Super. 105, 514 A.2d 165 (1986). I find none of these cases apposite.

In none of the three cases cited by the Defender Association was the arresting officer informed that the suspect would be either armed or dangerous. In *Marconi*, a plain clothes officer approached the occupants of a vehicle parked in a school parking lot at 7:15 P.M. in daylight to determine

whether either of the occupants, who had exchanged front seats, was intoxicated and why they had parked next to a school. The officer recognized both occupants as persons with whom he had prior contact in responding to domestic disputes. The trial court found as a fact that the officer had felt no weapons prior to reaching into the defendant's rear pocket and removing two plastic bags. *Marconi* 408 Pa.Super. at 605–606, 597 A.2d at 618. The Defender Association cites *Marconi* for the principle that when items felt during a pat-down cannot be considered weapons, further retrieval cannot be legally condoned. I find nothing in the transcript of testimony in the case before us to compel a conclusion that Officer Acevedo had not, or could not, consider the bulge in S.D.'s pocket a weapon.

By the same token, in *Canning*, a stranger, without shirt, shoes and socks, had been pacing back and forth on a front porch in a residential area of Philadelphia. He appeared intoxicated and confused; he stated he was looking for his car. There, we found that the search and seizure of two packets from the defendant's pants pocket could not be justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because the officer did not articulate any specific facts to justify a reasonable belief that the person might be armed and dangerous nor did the officer confine his search to items that may have reasonably appeared to be weapons. *Canning* 402 Pa.Super. at 441, 587 A.2d at 331.

Finally, in *In the Interest of Dixon*, this Court concluded that the arresting officer may have reasonably believed that criminal activity was afoot, but the record contained no evidence to support any reasonable belief by the officer that the suspect was "armed and dangerous". *Dixon*, 356 Pa.Super. at 108, 514 A.2d at 167.

In none of the cases cited by the Defender Association is there any suggestion that the "perception" of the arresting officer as to his thoughts while conducting a weapons search is controlling when reviewing the validity of a *Terry* search. In none of those cases is the suppression court's authority to draw legal conclusions from uncontradicted facts in dispute. I

find no abuse of discretion on the part of Judge Jelin in concluding that Officer Acevedo had reasonable grounds for removing a bulge from a suspect's right pants pocket during a *Terry* stop and search, where the officer had information from which he could justifiably believe that the suspect was armed and dangerous.

Both of my colleagues assert that under the standard announced in *Minnesota v. Dickerson,* 508 U.S. ——, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), S.D.'s rights were violated by the seizure. I strongly disagree. Neither the appellant, S.D., nor the Commonwealth have had any opportunity to either brief or argue the points asserted in the lead opinion. This case was submitted to our panel without oral argument, presumably in the belief that it would be decided under well-established, existing legal principles.

*Dickerson* is inapposite on this submitted appeal, as the facts in *Dickerson* clearly demonstrate. That case is of no value in deciding whether Judge Jelin erred in the juvenile adjudication now before us. In *Dickerson,* the accused began walking toward a marked squad car in which two police officers were patrolling. Dickerson made eye contact with one of the officers, abruptly halted, began walking in the opposite direction, and turned and entered an alley. The officers ordered Dickerson to stop and submit to a Terry, pat-down search. The search revealed no weapons. Thereafter, the officer conducting the patdown felt a small lump in the front pocket of Dickerson's nylon jacket.

After a jury trial and guilty verdict, Dickerson appealed to the Minnesota Court of Appeals which reversed the conviction, concluding both that (1) the seizure violated *Terry v. Ohio* principles and (2) a "plain feel" exception to the warrant requirement of the Fourth Amendment was not indicated. On further appeal, the Supreme Court of Minnesota affirmed the order reversing the judgment of conviction. It held that, even if a "plain feel" exception was to be recognized, the record in Dickerson's case established that the officer who searched Dickerson did not immediately recognize the lump in Dickerson's pocket as cocaine. The Minnesota Supreme Court ex-

pressly found that the officer determined that the lump was contraband *only after* squeezing, sliding, and otherwise manipulating the contents of the pocket, which the officer already knew contained no weapon.

In stark contrast, Judge Jelin was presented with uncontested facts that the police officer who searched S.D. had a justifiable belief that S.D. was armed and dangerous at the very moment the search began. My colleagues conclude that the removal, in the midst of a *Terry* search, of a bulging article from the front right pants pocket of a suspect believed to be armed offends constitutional principles. *Dickerson* does not support that conclusion, nor does any other case with which I am familiar.

I find no error in Judge Jelin's disposition of this case. I would affirm the disposition order of December 8, 1992, which placed S.D. on intensive drug/alcohol probation. I must therefore respectfully dissent.