## In the Interest of T.B.

C.P. of Dauphin County, no. 664 J.D. 1995.

*George Matangas,* for the Commonwealth.
*Rebecca J. Margerum,* for defendant.

TURGEON, *J.,* August 22, 1996—Juvenile T.B. has been charged with possession with intent to deliver a controlled substance (crack cocaine) and unlawful possession of drug paraphernalia (pager, food stamps and cash). Currently before the court is his motion to suppress. Testimony on this motion was taken on May 21, 1996.

## FINDING OF FACTS

On May 10, 1996, at approximately noon, while driving in their patrol car on 13th Street in Harrisburg,

Officer Jeffrey Cook and his partner, Detective David Lau, observed T.B. standing outside a Save-A-Step store. Upon observing the officers, T.B. went inside the store. (Suppression hearing, N.T. 9.) It was Officer Cook's opinion that T.B. entered the store to avoid the officers. (15.) On the previous day, Detective Lau and other officers had been in the same area and had approached a group of six to eight individuals believed to be juveniles, at which point they all dispersed, throwing away drugs, money and pagers in the process. (21.) Detective Lau believed T.B. had been amongst that group. (22.) Officer Cook had learned from another officer at the scene that day, that T.B. was a juvenile. (10-11.)

The officers then went inside the store to inquire why he was not in school. (9, 19.) In addition to truancy, Detective Lau thought that T.B. might be involved in drug activity. (22.) Detective Lau first asked T.B. if he could search him and T.B. refused. (23.) T.B. told the officers his name, his age (17) and explained that he was not in school because he had been suspended. Detective Lau then informed the juvenile he was going to be taken into custody and then to school. (19-20.) Detective Lau testified T.B. was placed into custody because he was in violation of the truancy act. (21.) It was Detective Lau's intention to take him to the police department until his parents could be notified and find out why he was not in school. (21.) At that point, T.B. was placed in handcuffs by Detective Lau who then performed a "pat search" of T.B. (24.) According to Detective Lau, this search was done prior to placing T.B. in the patrol car in order to find "weapons [or] contraband." (24.) During the search, Detective Lau went into the pockets of T.B.'s jacket and found a ziploc baggie containing several pieces of rock cocaine. (9, 20, 24.) The officers also discovered a pager, food stamps and cash on T.B. at the scene but did

not remove those items until after he had been taken to the police station. (12-13, 15.) Following the discovery of contraband, Detective Lau stated he placed T.B. under arrest. (20.)

Officer Cook described the search performed by Detective Lau as a "pat-down." (12.) Officer Cook agreed that T.B. was arrested after the contraband had been discovered. (12.) Prior to the arrest, despite having been placed in handcuffs, Officer Cook described T.B. as having been merely "detained." (12.)

Prior to being transported by the police, T.B.'s mother showed up at the scene and indicated that T.B. had not in fact been suspended from school. His father later indicated the same. (25.)

## DISCUSSION

T.B. argues that the search performed by Detective Lau was illegal in that it exceeded the parameters of a *Terry* pat-down. *Terry v. Ohio,* 392 U.S. 1 (1968). T.B. also argues that assuming the search was otherwise legal, the placing of T.B. in custody for violation of the truancy laws was merely a pretext for conducting a search for drugs. The Commonwealth argues that the search was legal as incident to a lawful arrest for truancy.

### Terry *Pat-Down Search*

The stop of T.B. in the store was a permissible *Terry* stop for the purpose of investigating possible truancy violations. Pursuant to *Terry v. Ohio,* "a police officer may temporarily detain a person if he observes unusual conduct which leads him to reasonably conclude in light of his experience, that criminal activity may be afoot." *In the Interest of S.D.,* 429 Pa. Super. 576, 579, 633 A.2d 172, 174 (1993) (quoting *Commonwealth v. Patterson,* 405 Pa. Super. 17, 20, 591 A.2d 1075, 1077

(1991)). A reasonable suspicion necessary to justify a *Terry* stop is less stringent than probable cause, but requires more than a hunch on the part of the police officer. *Id.* at 579, 633 A.2d at 174. Here the stop of T.B. was justified since the police officers had a reasonable suspicion that he was a child not in school on a weekday afternoon and thus in violation of the attendance requirements of the Public School Code of 1949, which allows a police officer to arrest a child who is truant from school. 24 P.S. §1-101 et seq. Section 13-1343 provides police with the authority to make such arrests, as follows:

"Section 13-1343. *Arrest of children failing to attend school.*

"When an attendance officer or a state, municipal, port authority, transit authority, housing authority or school police officer arrests or apprehends any child who fails to attend school as required by the provisions of this Act, he shall promptly notify the parents, guardian, or person in parental relation to such child, if such person can be found in the district and unless requested by such parent, guardian, or person in parental relation to place said child in a school other than a public school, he shall place said child in the public school in which the child is, or should be, enrolled." 24 P.S. §13-1343.

Any child of compulsory school age who has turned 13 years of age and who fails to comply with the compulsory attendance requirements of the Act or who is habitually truant, commits a summary offense, assuming his or her parent(s) or guardian(s) took every reasonable step to insure attendance of the child at school. 24 P.S. §13-1333(b)(1). The compulsory ages for school children is from 8 years up until a child has turned 17. 24 P.S. §13-1326. Thus, from viewing T.B., whom the officers knew to be a juvenile and not in school during the day, the officers had a reasonable suspicion

that T.B. was in violation of the truancy law and detaining him for further investigation was appropriate.

T.B. argues, however, that the search of the juvenile performed by Detective Lau was an illegal *Terry* patdown. The search or frisk of a suspect incident to a *Terry* stop must meet a higher threshold of justification than the stop itself. *Commonwealth v. Jackson,* 359 Pa. Super. 433, 437, 519 A.2d 427, 430 (1986). Such a search is proper only where a police officer observes "unusual and suspicious conduct on the part of the individual which leads him to reasonably believe that criminal activity is afoot and that the person may be armed and dangerous." *Commonwealth v. Lagana,* 517 Pa. 371, 376, 537 A.2d 1351, 1354 (1988) (citing *Terry* at 30). A juvenile detained only for a possible violation of the truancy laws will normally not provide officers with a reasonable belief the juvenile may be armed and dangerous. However, in this case, the officers had knowledge that T.B. might have been involved with a group of individuals the previous day who had been involved in drug activity, which would give the officers reasonable belief that this juvenile might be armed, thus warranting a *Terry* pat-down. See *Patterson, supra* at 22, 591 A.2d at 1078 (court took judicial notice that drug dealers are likely to be armed and dangerous).

Generally, a *Terry* search is limited to the detection of weapons in order to provide for the protection and safety of the police officer. *Commonwealth v. Eichelberger,* 352 Pa. Super. 507, 512, 508 A.2d 589, 591 (1986). However, a "plain feel" exception to the warrant requirement has been carved out by the courts which permits police to seize non-threatening contraband discovered during a protective pat-down search, so long as the search stays within the bounds permitted by *Terry*. *Commonwealth v. Stackfield,* 438 Pa. Super. 88, 94-95, 651 A.2d 558, 561 (1994) (citing *Minnesota v. Dickerson,* 508 U.S. 365, 113 S.Ct. 2130 (1993)). This ex-

ception is allowable where the officer feels an "object whose contour or mass makes its identity [as contraband] immediately apparent . . . ." *Id.* at 95, 651 A.2d at 561 (quoting *Minnesota v. Dickerson, supra* at 375, 113 S.Ct. at 2137). In such a case, probable cause exists for the officer to conduct a more intrusive search than would be otherwise permissible under *Terry. Id.* However, in order to invoke the "plain feel" exception warranting further intrusion into a suspect's pockets, the officer conducting the search must first feel an object he or she believes to be contraband during the pat-down. *Id.* (citing *In the Interest of S.D., supra*). In this case, as in *S.D.,* there was no testimony that the officer conducting the pat-down search felt an object he perceived to be contraband. Instead, Detective Lau immediately went into T.B.'s pockets admittedly looking for contraband. Thus, the search of T.B. was not a legal *Terry* pat-down search.

### Search Incident to Lawful Arrest

The Commonwealth argues, however, that the search of T.B. was not a *Terry* pat-down but rather a search incident to a lawful arrest for truancy. Where a suspect is lawfully arrested, the police may conduct a search which is generally limited to the person of the suspect and the area in his immediate control, for the protection of the arresting officer. *Commonwealth v. Gabrielle,* 269 Pa. Super. 338, 345, 409 A.2d 1173, 1177 (1980) (citing *Chimel v. California,* 395 U.S. 752 (1969)). Assuming a lawful arrest occurred here, the search performed by Detective Lau would have been legal.

Initially, we note that at the time the search was conducted, T.B. was under arrest despite both officers' opinions to the contrary. An arrest occurs by an act which indicates an intent to take a person into custody and subject him or her to the control and the will of the person making the arrest. *Commonwealth v. White,*

543 Pa. 45, 54, 669 A.2d 896, 901 (1995) (citing *Commonwealth v. Rodriquez,* 532 Pa. 62, 74, 614 A.2d 1378, 1384 (1992)). "An arrest may be effectuated without the actual use of force and without a formal statement of arrest." *Commonwealth v. Miller,* 426 Pa. Super. 410, 422, 627 A.2d 741, 748 (1993). "[T]he test employed is an objective one; it depends upon the reasonable impression conveyed to a person seized and not the subjective view of the police officers or the person being seized." *Id.* at 422-23, 627 A.2d at 748. T.B. was under arrest when he was handcuffed in the store and informed he would be transported in the officers' patrol car since at that point he was clearly subject to the will of the officers. The question thus becomes whether the officers had probable cause to arrest T.B. for his alleged criminal truancy violation.

"Probable cause is found if the facts and circumstances within the knowledge of the police officer at the time of the arrest are sufficient to justify a person of reasonable caution to believe the suspect has committed a crime." *Commonwealth v. Canning,* 402 Pa. Super. 438, 441-42, 587 A.2d 330, 332 (1991). We agree that the officers had a reasonable suspicion to stop and detain T.B. to investigate whether he was truant. However, having been advised by T.B. that he was 17, under the law as written, if the officers did not have a reason to disbelieve he was 17 or older, there then was no probable cause that he was in violation of the truancy laws. The testimony offered by the Commonwealth in this case failed to show that at that point in time the police had sufficient knowledge to believe T.B. was under 17 as required to be in violation of the compulsory attendance provisions of the Public School Code, and thus, they lacked probable cause to arrest T.B.

As noted, police have the authority to arrest or apprehend "any child who fails to attend school as required

by the provisions of this Act . . . ." 24 P.S. §13-1343. However, under the law, failure of a 17-year-old to attend school is not a violation of compulsory school attendance requirements. See 24 P.S. §§13-1326 and 13-1327. There was no testimony offered by the officers that they disbelieved that T.B. was 17 years old nor did they in any way suggest he looked younger than 17 or that they otherwise held a reasonable belief that he was. Officer Cook testified only that he believed T.B. was a juvenile, which includes children up to the age of 18. During his testimony he stated that the reason T.B. was placed into custody and handcuffed was so that the officers could "investigate the truancy further." (12.) Detective Lau testified the officers decided to investigate T.B. for dual purposes; because he appeared to be a juvenile and the officers wanted to find out why he was not in school and also because he suspected T.B. had been involved in drug activity, due to the prior day's events.[1] (22.)

Thus, based upon this testimony, the officers lacked probable cause to arrest him for truancy violations. Accordingly, having lacked probable cause to arrest T.B., the search incident thereto was illegal and under the law all the physical evidence which resulted from it must be suppressed. *Wong Sun v. United States,* 371 U.S. 471 (1963).[2]

---

1. Although both officers believed that T.B. had probably been involved in drug activity the prior day, the nature of this activity was not articulated at the suppression hearing and the Commonwealth did not attempt to argue that the officers had probable cause to lawfully arrest him for that suspected activity and thus perform a search incident to that arrest.

2. Having found probable cause lacking to arrest T.B. for truancy violations, we need not address T.B.'s argument that his arrest for truancy violations was merely a pretext to allow the officers to search for drugs.

Accordingly, we enter the following:

ORDER

And now, August 22, 1996, juvenile T.B.'s motion to suppress is hereby granted.