J-S08013-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

IN THE INTEREST OF: I.D., A MINOR

APPEAL OF: I.D., MINOR

: IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
:
:
:
:
:
:
:
:
: No. 1446 EDA 2024

Appeal from the Order Entered May 1, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-JV-0000483-2023

BEFORE:  DUBOW, J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY DUBOW, J.:                          **FILED JUNE 27, 2025**

Appellant, I.D. ("Juvenile"), appeals from the May 1, 2024 dispositional order entered following his adjudication of delinquency for Possession of Marijuana and Possession of Drug Paraphernalia.  Appellant challenges the denial of his motion to suppress.  Upon review, we affirm.

The following factual and procedural history is relevant to this appeal. On June 3, 2023, the Chester County Police Department dispatched police officer Jeffrey Abreu to meet with Appellant's father, H.D. ("Father"), face to face for approximately five minutes.  Father informed Officer Abreu that Children and Youth Services had custody of then-sixteen-year-old Juvenile, that Juvenile ran away from his group home and was reported missing, that he was just driving through the neighborhood and saw Juvenile standing on a

_____

[*] Retired Senior Judge assigned to the Superior Court.

porch of the corner house on the 2100 block of Edgmont Avenue in Chester, that Juvenile was wearing a black hoodie and black pants, that he had reason to believe that Juvenile had stolen a firearm the night before, and that he observed Juvenile fixing or shifting his waistband. Father also showed Officer Abreu a photograph of Juvenile. Officer Abreu proceeded to access the National Crime Information Center ("NCIC") database and confirmed Juvenile's missing status. The NCIC database contained an additional photograph of Juvenile and listed other identifying factors.

Officer Abreu requested additional police assistance, drove one-and-a-half blocks to the described house, and observed an individual matching Juvenile's description leaving the porch and getting into the rear driver's side seat of a vehicle parked in front of the house. Officer Abreu was unable to observe Juvenile's face. After observing a female exit from the driver's seat of the same vehicle, Officer Abreu and two additional officers approached the parked vehicle with their guns drawn. The windows of the vehicle were tinted, and the officers were unable to see inside. Officer Abreu opened the rear driver's side door, instructed Juvenile to exit the vehicle, recognized Juvenile from the NCIC picture, and asked Juvenile what his name was. Juvenile confirmed his identity and Officer Abreu proceeded to handcuff Juvenile as a precaution. Officer Abreu next asked if Juvenile had any weapons or contraband and Juvenile stated that he had "weed." N.T. Hr'g, 8/7/23, at 24. Officer Abreu recovered twelve plastic bags of marijuana from Juvenile's

- 2 -

pocket. While the vehicle door was open, Officer Abreu observed a black firearm on the rear floorboard of the vehicle behind the passenger seat.

The Commonwealth charged Juvenile with Firearms Not to be Carried Without a License, Possession of Firearm by Minor, Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Criminal Conspiracy.

On June 21, 2023, Appellant filed a motion to suppress asserting, *inter alia*, that the initial police encounter was not supported by reasonable suspicion or probable cause. Motion to Suppress, 6/21/23, at 9-10. On August 7, 2023, the trial court held a hearing on the motion. Officer Abreu testified in accordance with the above-stated facts. In addition, Office Abreu testified that he had seven years of experience patrolling the neighborhood where he located Juvenile and knew it to be a high crime area "known for shootings, homicides, drug trafficking, [and] gang violence." N.T. Hr'g at 19.

On the same day, the trial court denied the motion. On May 1, 2024, after an adjudicatory hearing, the court adjudicated Juvenile delinquent for Possession of a Small Amount of Marijuana and Possession of Drug Paraphernalia, found Juvenile in need of treatment, supervision, or rehabilitation, and ordered Juvenile to be placed on probation.

Juvenile filed a timely notice of appeal. The trial court did not order, and Juvenile did not file, a Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion.

Juvenile raises the following issues for our review: "Whether the trial court erred by denying [Juvenile]'s motion to suppress physical evidence

where Appellant was seized in the absence of specific, articulable facts to support a reasonable suspicion that he was engaged in criminal activity?" Juvenile's Br. at 4.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." ***Commonwealth v. Evans***, 153 A.3d 323, 327 (Pa. Super. 2016) (citation omitted). "Once a motion to suppress evidence has been filed, it is the Commonwealth's burden to prove, by a preponderance of the evidence, that the challenged evidence was not obtained in violation of the defendant's rights." ***Commonwealth v. Wallace***, 42 A.3d 1040, 1047-48 (Pa. 2012).

Our scope of review of the suppression court's factual findings is limited to the record from the suppression hearing. ***Commonwealth v. Barr***, 266 A.3d 25, 39 (Pa. 2021). "Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error." ***Commonwealth v. Cephus***, 208 A.3d 1096, 1098 (Pa. Super. 2019) (citation omitted). We defer to the suppression court, "as factfinder[,] to pass on the credibility of witnesses and the weight to be given to their testimony." ***Commonwealth v. Elmobdy***, 823 A.2d 180, 183 (Pa. Super. 2003).

The Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. ***In re D.M.***, 781 A.2d 1161, 1163 (Pa. 2001). To

effectuate these protections, the exclusionary rule bars the use of illegally obtained evidence in state prosecutions to deter illegal searches and seizures. *Commonwealth v. Arter*, 151 A.3d 149, 153-54 (Pa. 2016). "To secure the right of citizens to be free from [unreasonable searches and seizures], courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive." *Commonwealth v. Beasley*, 761 A.2d 621, 624 (Pa. Super. 2000).

Our Supreme Court has recognized three types of interactions that occur between law enforcement and private citizens: (1) mere encounter, (2) investigative detention, and (3) custodial detention. *Commonwealth v. Adams*, 205 A.3d 1195, 1199–1200 (Pa. 2019). A mere encounter "does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity" and "does not compel the citizen to stop or respond to the officer." *Id.* at 1199. Further, "[a] mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way." *Id.* "The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot." *Id.* at 1199-1200. Finally, "[t]he third, a custodial detention, is the functional

equivalent of an arrest and must be supported by probable cause.  A custodial detention also constitutes a seizure." *Id.* at 1200 (internal citation omitted).

Instantly, Juvenile avers that Officer Abreu did not have reasonable suspicion to conduct an investigative detention of Juvenile because Father's tip to Officer Abreu was not sufficiently reliable.  Juvenile's Br. at 13.  Juvenile asserts that Officer Abreu had no reason to believe that Father was being truthful. *Id.* at 14.  To support this, Juvenile argues that Father did not inform Officer Abreu who initially reported Juvenile missing or where Juvenile was supposed to be living, Father did not inform Officer Abreu why he believed Juvenile stole a firearm, and Father did not observe the actual firearm.  *Id.* Juvenile further argues that Officer Abreu had never met Father before, did not observe Juvenile engaging in any criminal activity, and could not observe Juvenile's face.  *Id.* at 14-17.  Juvenile's arguments are unavailing.

The assessment of whether reasonable suspicion exists for an investigatory detention requires an evaluation of the totality of the circumstances.  *Commonwealth v. Gray*, 784 A.2d 137, 142 (Pa. Super. 2001).  "Among the factors to be considered in establishing a basis for reasonable suspicion are tips, the reliability of the informants, time, location, and suspicious activity, including flight."  *Id.*  Reasonable suspicion "is a suspicion that is less than a preponderance of the evidence but more than a hunch." *Commonwealth v. Jackson*, 907 A.2d 540, 543 (Pa. Super. 2006) (citation omitted).  When evaluating whether reasonable suspicion existed in a particular case, this Court must "view the circumstances through the eyes

of a trained officer, not an ordinary citizen." ***Commonwealth v. Riley***, 715 A.2d 1131, 1135 (Pa. Super. 1998). "Reasonable suspicion depends upon both the content of the information possessed by the police and its degree of reliability." ***Commonwealth v. Wiley***, 858 A.2d 1191, 1194 (Pa. Super. 2004) (citation omitted).

"At the outset, we note that a police officer need not personally observe the illegal or suspicious conduct which lead him or her to believe that criminal activity is afoot and that a person is armed and dangerous." ***In Interest of S.D.***, 633 A.2d 172, 174 (Pa. Super. 1993). When an officer receives a tip, this Court must consider "the specificity of the description of the suspect in conjunction with how well the suspect fits the given description, the proximity of the crime to the sighting of the suspect, the time and place of the confrontation, and the nature of the offense reported to have been committed." ***Id.*** (citation omitted). We acknowledge that "mere presence in a high crime area [is] insufficient to support a finding of reasonable suspicion [but] a court could consider the fact that the stop occurred in a high crime area in assessing the totality of the circumstances." ***In re D.M.***, 781 A.2d at 1163–64 (citation and internal quotation marks omitted).

Notably, "[t]his Court has distinguished cases involving tips received by anonymous phone calls and those received in person." ***Commonwealth v. Soto***, 202 A.3d 80, 91 (Pa. Super. 2018). Unlike an anonymous tip, "a face-to-face report exposes the tipster to possible criminal liability and permits an officer to observe the witness's demeanor and assess the witness's credibility

in light of the officer's past experience with investigating crimes." *Id.* (citation and internal quotation marks omitted). Consequently, "a tip made in person must be given more weight than a mere anonymous phone call." *Id.* (citation and internal quotation marks omitted).

At the conclusion of the suppression hearing, the court explained on the record its decision to deny Juvenile's motion, emphasizing the reliability of the source and the serious nature of the alleged offense. The court explained:

> I'm going to deny the motions to – to suppress. The – I understand defense's position that they didn't know whether the initial call from [F]ather – what kind of source he was, but it strikes me as reasonable, and the – looking at the totality of the circumstances, that if a person describes himself as a father and says my son is missing and he may have a gun, a father describes how he [heard] it last night, he saw the waistband from [Juvenile], that [Juvenile] reached for his waistband, it all sounded reasonable enough for the officer to follow up.

N.T. Hearing, 8/7/23, at 102-103.

Moreover, the court found Officer Abreu's testimony to be credible that he checked NCIC to confirm that Juvenile was missing and that when he spotted Juvenile on the porch Juvenile's clothing matched the description that Father provided. *Id.* at 103-104. The court concluded, that under the totality of the circumstances, it was reasonable for Officer Abreu "to open the back door without permission, without tapping on the window, doing anything to engage the occupants when it was tinted windows and the possibility of a young man inside or someone else having a gun." *Id.*

Upon review, the record supports the trial court's findings. Looking at the totality of the circumstances, we discern no abuse of discretion in the trial

court's conclusion that Officer Abreu had reasonable suspicion to open the rear passenger door of the parked car and order Juvenile to step out. Officer Abreu received a face-to-face tip from Father indicating that Juvenile was a missing child, stole a firearm the night before, and was currently on a front porch a block away wearing a black hoodie and pants. The fact that the tip was given in person allowed Officer Abreu to give it more weight than an anonymous tip. Officer Abreau investigated the reliability of the tip by accessing NCIC to confirm Juvenile's missing status and observe a picture of Juvenile. Officer Abreu then drove about a block to the area where Father reported seeing Juvenile, which Officer Abreu knew to be a high crime area based on his years of experience patrolling that neighborhood. Officer Abreu immediately observed an individual matching Juvenile's description exit the porch described by Father and enter the back seat of a parked car with tinted windows, which obstructed Officer Abreu's view inside the car. These facts, viewed in their totality, gave Officer Abreu reasonable suspicion to seize Juvenile. Accordingly, we discern no abuse of discretion.

In sum, we conclude that the court properly denied Juvenile's motion to suppress. Accordingly, we affirm the order the court that adjudicated Juvenile delinquent for Possession of a Small Amount of Marijuana and Possession of Drug Paraphernalia, found Juvenile to need treatment, supervision, or rehabilitation, and ordered Juvenile to be placed on probation.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>6/27/2025</u>